IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CASE NO.  5:18-CR-00340-DNC |
| | : | |
| Plaintiff | : | JUDGE DONALD NUGENT |
| | : | |
| vs. | : | |
| | : | |
| **JUSTIN McKNIGHT** | : | **SENTENCING MEMORANDUM** |
| | : | |
| Defendants | : | |

Now comes the Defendant, JUSTIN McKNIGHT, by and through his duly authorized

attorney, HENRY J. HILOW, and hereby submits the attached sentencing memorandum and

additional attachments for the court's consideration.

Respectfully Submitted,

 /s/Henry J. Hilow.
**HENRY J. HILOW (0019601)**
HILOW & SPELLACY LLC
The Rockefeller Building, Suite #1300
614 West Superior Avenue
Cleveland, Ohio 44113
Phone: (216) 344-9220
Fax: (216) 664-6999

ATTORNEY FOR DEFENDANT
JUSTIN McKNIGHT

## MEMORANDUM

On June 27, 2018, this Honorable Court named the Defendant, Justin McKnight, in a two-count Indictment. Count One charged Receipt and Distribution of Visual Depictions of Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C § 2252(a)(2), and Count Two charged Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). On November 19, 2018, Mr. McKnight pled guilty to both Counts. On February 11, 2019, the U.S. Pretrial Services and Probation Office in the Northern District of Ohio issued its revised Presentence Investigation Report (PSI).

The report set a Base Offense Level of Twenty-Two (22). Two (2) points were added because the material involved a prepubescent minor or a minor who had not attained the age of twelve (12). Five (5) points were added because the offense involved six-hundred (600) or more images. Four (4) points were added because the offense involved material that portrayed sadistic or masochistic conduct or other depictions of violence. Two (2) points were added because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material or for accessing with intent to view the material.

Additionally, two (2) points were subtracted because the Defendant clearly demonstrated acceptance of responsibility for the offense. One (1) point was subtracted because the Defendant assisted authorities in the investigation or prosecution of his own misconduct through a timely notification of his intention to enter a guilty plea. The final result is a Total Offense Level of Thirty-Two (32), and a criminal history category of II, for which the guideline imprisonment range is one-hundred and thirty-five (135) months to one-hundred and sixty-eight (168) months, with probation, supervised release, and associated fines/restitution. Mr. McKnight pled guilty

under the statutes, 18 U.S.C. § 2252(b)(1) and 18 U.S.C. § 2252A(b)(2), and requests the Court impose the minimum term of imprisonment of five (5) years.

The United States Supreme Court held that the Sentencing Guidelines set forth by the United States Sentencing Commission are advisory. United States v. Booker, 543 U.S. 220 (2005). Accordingly, the Court typically uses a three-step process in determining what sentence to impose upon a defendant. First, the Court determines the proper advisory guidelines range. Gall v. United States, 552 U.S. 38, 49 (2007). Next, the Court will determine whether any departures from the advisory Guidelines range apply. United States v. Phelps, 366 F.Supp.2d 580, 586 (E.D. Tenn. 2005). In doing so, the Court considers arguments and motions filed by the parties for upward or downward departures under the Guidelines or the Sentencing Commission's policy statements. 18 U.S.C. § 3553(a)(4), (5). The Court must then identify the appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a). *Phelps*, 366 F.Supp.2d at 586. This determination is based on "an individualized assessment based on the facts presented." *Gall*, 128 S.Ct. at 597. The Court may either impose a sentence within the applicable Guidelines range, if such sentence is consistent with the Court's consideration of the factors laid out in 18 U.S.C. § 3553(a), or it may impose a non-Guideline sentence.

As numerous courts continue to illustrate, including some in the Sixth Circuit, the Sentencing Guidelines for child pornography, found in § 2G2.2, are not the product of the Sentencing Commission's professional staff and empirical evidence. United States v. Stern, 590 F.Supp.2d 945, 960 (N.D. Ohio 2008). Instead, Congress has repeatedly and without empirical analysis amended the Sentencing Guidelines to increase the penalties for child pornography offenses. U.S. v. McElheney, 630 F.Supp.2d 886, 892 (E.D. Tenn. 2009). As the court held in McElheney, "[D]espite increasing deviations from the child pornography Guidelines, the

Commission cannot take into account these deviations and revise the Guidelines to account for the reasons for the deviations. This has led in part to the Guidelines no longer being descriptive or predictive." *Id.*, at 893.

In child pornography cases, courts have increasingly imposed sentences below the recommended Guideline range. In 2011 for example, federal courts nationwide imposed sentences below the Guideline range in 66 percent of cases. United States v. Marshall, 870 F.Supp.2d 489, 491 (N.D. Ohio, 2012). In addition, a recent study conducted in the Northern District of Ohio shows that nearly 40 percent of the sentences for child pornography offenses within the District were below the Guideline range. United States v. Syzmanski, 2009 WL 1212252 at *2 (N.D. Ohio, Apr. 30, 2009). Further, a 2010 survey of federal judges conducted by the United States Sentencing Commission showed that approximately 70 percent of the federal bench considered the current sentencing regime for child pornography possession and receipt cases to be too severe, and over 70 percent believed the mandatory minimum in receipt cases was too high. *See* U.S. Sentencing Comm'n, *Results Of Survey of United States District Judges*, at 5 and 11 (2010), available at: http://www.ussc.gov/Research/Research¬_Projects/Surveys/0100608_Judge_Survey.pdf.

Variances from the Guideline range in child pornography cases are striking, with some courts imposing probationary sentences even though the Guidelines recommend significant prison terms. *See* United States v. Autery, 555 F.3d 864, 867-68 (9th Cir. 2009) (affirming probationary sentence when Guideline range was 41 to 51 months). Some courts have also imposed sentences that were well below the bottom of the Guideline range. For example, in United States v. Stall, 581 F.3d 276 (6th Cir. 2009), the Court upheld the District Court's

sentence of one day in prison and ten years of supervised release for a defendant convicted of possession of child pornography.

In Marshall, the court observed that the high rate of variances from the Guideline range "can be explained by the belief that tough sentences in these cases are punishing a defendant for something he or she has not yet done—and may never do—actual contact with children." *Marshall*, 870 F.Supp.2d at 491. As the court also pointed out, under the Guidelines, "some of the recommended sentences for viewers can, with enhancements, be higher than those for actual predators." *Id.* In the instant case, some of the specific offense characteristics that operate to increase the Defendant's recommended sentence are present in nearly every case and therefore no longer operate to differentiate offenders based on the seriousness of their crimes.

The Defendant's recommended Guideline sentence was increased by four points because the material portrayed sadistic or masochistic conduct or other depictions of violence. This enhancement applies even if "the judge is certain that the offender had no intention of receiving or possessing such material." *Marshall*, 870 F.Supp.2d at 495. A single file can trigger this enhancement. *Id.* In Marshall, the Court held that this enhancement "fails to identify and differentiate those with a penchant for deviant conduct from the less-culpable offenders. This is so because sadistic and masochistic conduct is defined broadly, and applies to any image that is likely to cause physical or emotional pain—even if no evidence of such pain or cruelty exists." *Id.* In a 2017 report, this enhancement applied to 71.2 percent of cases. United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2017*, at page 45, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-

frequencies/2017/Use_of_SOC_Guideline_Based.pdf (hereafter referred to as "USSC Offense Characteristics Report").

Mr. McKnight also received a five-point enhancement because the offense involved 600 or more images. As the Marshall Court observed, this is a shockingly low cap, as each short video clip can contain as many as 75 images. *Marshall*, 870 F.Supp.2d at 494. Further, this enhancement applies in 74.7 percent of cases. *USSC Offense Characteristics Report*, at 46.

In addition, the Defendant received two points because the material involved a prepubescent minor—an enhancement that applies in 94.1 percent of cases. *USSC Offense Characteristics Report*, at 45. The Court added two more points to Mr. McKnight's Guideline Sentence because the offense involved the use of a computer. As the *Marshall* Court observed, when the use of a computer enhancement was first introduced, only 28 percent of offenders used computers. *Marshall*, 870 F.Supp.2d at 494. Currently, nearly 95.7 percent of offenders use a computer, meaning this enhancement applies in nearly every child pornography case. *USSC Offense Characteristics Report*, at 46. Further, the enhancement "fails to distinguish defendants who are a threat to the community from those who are not, as the 'empirical data does not show that using a computer…is a more serious or culpable offense than viewing the same images if they had been received by another medium such as through the mail.'" *Marshall*, 870 F.Supp.2d at 494, quoting Troy Stabenow, *A Method for Careful Study: A Proposal for Reforming the Child Pornography Guidelines*, 24 FED. SENT'G REP. 2, 122 (2011).

The fact that these enhancements apply in the vast majority of child pornography cases operates to diminish their effectiveness, as they are essentially arbitrarily increasing the sentence of each and every child pornography offender, leading to extremely high sentences. After taking all of this information into consideration, the Marshall Court held that the Guidelines did not

deserve controlling weight, and it instead applied the general sentencing factors laid out in 18 U.S.C. § 3553(a). The Defendant urges this Honorable Court to do the same.

Under 18 U.S.C. § 3553(a), sentencing courts must consider seven factors when sentencing a defendant:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)     the need for the sentence imposed—
(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)     to afford adequate deterrence to criminal conduct;
(C)     to protect the public from future crimes of the defendant; and
(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
(3)     the kinds of sentences available;
(4)     the sentencing range established by the guidelines;
(5)     any pertinent policy statements issued by the Sentencing Commission;
(6)     the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
(7)     the need to provide restitution to any victims of the offense.

This Section instructs courts to impose a sentence that is "sufficient, but not greater than necessary." If the Court sentences the Defendant to a sentence below the Guideline range, he will still serve time in prison for his actions, which is an adequate punishment for his crime. A significant prison term will serve as an adequate deterrent to Mr. McKnight. Sentencing the Defendant to a lower prison term than is recommended by the Guidelines would fulfill the goal stated in 18 U.S.C. § 3553(a) to impose a sentence that is "sufficient, but not greater than necessary." Mr. McKnight will receive adequate punishment and sufficient rehabilitation from a sentence that is lower than the one recommended by the Sentencing Guidelines. It is clear from this discussion of the Sentencing Guidelines, the Presentence Investigation Report, the statutory minimum for the statute Mr. McKnight pled under, and the following discussion of Mr.

McKnight's personal history, that the Defendant here is an ideal candidate for the statutory minimum sentence.

Mr. McKnight is a well-respected, hard-working member of society, who will live with the guilt, shame, and regret associated with this case and his mistakes for the rest of his life. He was born on July 22, 1981, in Coshocton, Ohio, to John Bailey, his father, and Julie McKnight, his mother. His parents never married, and Mr. McKnight never met his father. Mr. McKnight's mother is fifty-nine years old and in poor health. He provides care and financial support for her. Mr. McKnight married Shawna Bratcher on November 16, 2018 and they reside together at 1453, Ellesmere Avenue Northwest, North Canton, Ohio.

Mr. McKnight is still battling issues with drug addiction. In 2013, he voluntarily completed a three-month inpatient substance abuse treatment program at CommQuest in Canton, Ohio. Mr. McKnight last used heroin in 2013. He also confirmed addictions to alcohol and marihuana, both of which he ceased using in April and June of 2018 respectively. Mr. McKnight began substance abuse counseling at Phoenix Rising Behavioral Healthcare and recovery in Canton, Ohio on July 9, 2018, an experience he is grateful for and through which he continues to make significant progress.

Mr. McKnight graduated from Fairless High School in Navarre, Ohio in 1999. He went on to receive an associate degree in business from Central Ohio Technical College, in Newark, Ohio, in 2004. In 2008, Mr. McKnight earned a bachelor's degree in human resources from Franklin University in Columbus, Ohio. Since November of 2018, Mr. McKnight works as a laborer at Scott's Miracle Grow in Orville, Ohio earning $13.95 hourly. His employer decided to keep him on his staff despite these allegations because of his respect for Mr. McKnight and his value as an employee. Prior to this, Mr. McKnight worked as a laborer at Country View

Landscaping in Apple Creek, Ohio from February 2015 to November 2018. He earned $9.00 an hour and left because work opportunities began to slow down. Mr. McKnight also worked at Arby's in Canton, Ohio, from January of 2014 to February of 2015, McDonald's in Coshocton, Ohio, from March 2012 to January 2014, and as a clerk at Hospice, Coshocton, from 2006 to 2008. An employment gap from 2008 to 2012 is attributable to Mr. McKnight's heroin addiction. Employers consistently regard him as a reliable and hardworking employee. In the future, Mr. McKnight plans to become an entrepreneur of a team building/leadership development company.

Mr. McKnight's sentiments regarding this case remain unchanged. He accepts responsibility and does not attempt to make any excuse for his actions. Mr. McKnight will live with the guilt and shame connected to this offense for the rest of his life and he carries the burdens of his own actions with him daily. He plans to focus his future on utilizing every possible opportunity to reform himself for the better and to stay away from the dark place that caused this behavior. Mr. McKnight does wish to acknowledge his frustration that internet browsers bear no responsibility for his crimes and crimes like them. Browsers facilitate this behavior and are never held accountable.

A community of friends, family, and coworkers continue to express their unwavering support of Mr. McKnight. Several of Mr. McKnight's supporters' letters and signatures are attached below, each asserting strong evidence of his good character and each expressing that these offenses do not reflect Mr. McKnight's true character (Exhibits A-E). Mr. McKnight hopes to return to his family as soon as possible, as a better man, and respectfully requests that this Honorable Court impose a sentence lower than what the Sentencing Guidelines recommend. The Defendant in this case pled under the statute, and should receive the statutory minimum sentence.

Respectfully Submitted,

/s/Henry J. Hilow.
**HENRY J. HILOW (0019601)**
HILOW & SPELLACY LLC
The Rockefeller Building, Suite #1300
614 West Superior Avenue
Cleveland, Ohio 44113
Phone: (216) 344-9220
Fax: (216) 664-6999

ATTORNEY FOR DEFENDANT
JUSTIN McKNIGHT

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Sentencing Memorandum was forwarded to

Carol M. Skutnik, Esq., Assistant United States Attorney, via the Court's electronic filing

system, on this 19th day of February, 2019

/s/Henry J. Hilow.
**HENRY J. HILOW (0019601)**

EXHIBIT

tabbies

A

Honorable Donald Nuggont:

I want to start off by saying that I am very sorry for being part of this horrible material. I live with feelings of remorse, guilt, and shame every moment of everyday. Alot of people have helped me to turn my life around over the last few. By giving into my own insecurities and issues I have let all of them down. This weighs heavily on me daily because I know my actions will continue to cause hurt and chaos in their lives for years to come

When I was viewing this material, I was not processing it for the horendous material that it is. At the time it was just another of the hundreds of horendous categories of pornography freely awalible on the surface of the World Wide Web. After much reflection, I can see the damage even just viewing this material can cause. Not only to my person but espically to my loved ones, those around me and society as a whole.

At first I wanted to shift blame to anywhere other than myself. I tried to justify my behavior by pointing out the hypocricy surrounding this material and its avalibility. The pain and the chaos I have caused in the lives of those who love me, have opened my eyes to the selfishness of my behavior. I realise that I have no one to blame but myself! There are many evil temptations in this world and there always will be. With help I must learn to manage my addictions on all levels

1/4

I have taken responsibility for my actions by admitting my crimes. I would like to point out and ask that you take into consideration: That when the items containing this material was confiscated that the material had been deleted and not saved anywhere. I had no intention to keep this material. Also I had no contact with anyone, I never paid for or sold this material. I never traded this material: I was never a part of any groups / chats / communities. I never had any involvement in any production of this material. I regretfully viewed it as open source material on the surface of the Internet. i also had no idea that this material was being upload to a site and thought by stopping the seeding process I was preventing that from happening.

My record does not properly reflect the man I am today. Years of drug use and poor mental health lead me to make many selfish and negative life changing decisions. It wasnt until I was sentenced to six months in jail on my last charge that I was able to slow down and see the havoc my actions had caused in my life and the lives of those around me.. Being immersed in the negative enviroment of jail opened my eyes to the fact that I did not want to live this life anymore. So I began to take steps to becoming a better person.

The first step I took was to obtain a trustee status. This was not easy to do because of my charges, but through conversations with C.O.'s and the Leiutenat I was able to become a trustee. I used this privilage to start to better myself. I volunteered for every community service I could. Eventually being allowed to leave the jail for community jobs.

2/4

The day I was released from jail I put myself into drug treatment. I stayed in treatment for the next five months. This helped me to take a good look at myself and get an understanding for why I was behaving like I had been for so many years. I also used this time to rebuild relationships and to create new healthy ones. I say all this because I feel that I am the type of person that can change with proper treatment.

Over the last four years I have made many changes for the good in my life. I got out of rehab with only the clothes on my back. A friend let me stay with him and for the next year I took the bus everyday and worked at Arbys. All in an effort to continue moving forward. After a year an Amish company offered me the job of my lifetime. They helped me get a loan for a truck. I took this opportunity and made the most of it. Over the next three years I went to work everyday and tried to better my life daily. During this time I met my Wife (Shawna) who taught me what it is to love and to be loved. Other than my demons that lead to this charge at hand, life was going very well and gaining momentum. In an effort to continue being able to improve mine and my wifes life I humbly ask you to consider a minimum sentence and treatment so I can still come out of this a productive functioning member of society and the Husband my Wife deserves. In 5 years I will be 42.5 years old I can still salvage a life at this point.

³/4

My weaknesses have led me down many dark roads. And my relationship to porn shamefully got out of control and it needed to be stopped. But with help I have proven that I can overcome my weaknesses to become a better person.

Through my time on house arrest I have maintained full-time employment continuing to be the head of my house hold. I have continued to be a productive member of society. I have put aside my needs to assure I can leave my wife in the best position I can.

My employer has agreed to keep me employed even after I serve my time. I have maintained most of my positive relationships. I am paying on a $90,000 student load debt. My mother is in poor health and she has no one else to depend on. I help her financially and in anyway she needs me to. I am a positive member of community that helps in any way I can. I am an honest and dependable person. Even through this process I have been honest. I hope by admitting to my crimes allows you to see that I am taking ownership and that I want to make things wright.

I believe that my time on bond helps show I am not a monster or a hardened criminal or a threat to my community and those around me. I just ask you take all I have said *into consideration. that yes I still have issues that need to be addressed and behavior that needs to have consequences. But I am at a point in my life where I have turned around old negative behaviors and have made many great and positive changes and I just ask for the opportunity to continue to do so.

4/4

— Thank You   Custon MCh

EXHIBIT

B

(330)465-3046

Your Honor,

My name is Shawna Bratcher, Fiance to Justin McKnight. I appreciate you taking the time to read this. I have known Justin for 3 years, and we have spent literally every day together. With that being said, I have never met such a mature, educated, thoughtful, caring, and most of all loving person in my lifetime! He has been the most supportive, positive, and uplifting person in my life besides my mother! My whole family has met Justin and feels the same way as I see him. Justin has changed me in so many ways. He has not only made me the happiest, He has made me a better peron!

Since we have met (at the begining of rehab), I've noticed Justin has changed over the years into a beautiful person. With being sober, he has motivation and determination to do anything he puts his mind to. Hes very responsible and such a hard worker. He has built a great life for him and I, and is continuing to do so.

Poeple have made mistakes, I know I have! Some poeple, such as us, actually learn from them, make it right, and grow to become better people. What Justin has done in his past and the current accusations does not reflect the real man he truly is. He is for sure no where near a monster or bad person. Hes been around my whole family, adults and children, and I have never nor never would have any doubts, worries, or concerns him be around any of them, no matter who it is.

YOUR HONOR, I PRAY THAT YOU REALLY TAKE INTO CONSIDERATION EVERY THING IVE WRITTEN. THESE ARE HONEST, HEARTFULL FACTS ABOUT JUSTIN. WITH THESE ACCUSATIONS CURRENTLY ABOUT HIM, LOCKING HIM UP IS NOT GOING TO FIX OR CHANGE JUSTIN, NOR THE BIGGER PROBLEM AT HAND. JUSTIN NEEDS HELP, NOT PRISON.

JUSTIN MCKNIGHT IS AN AMAZING MAN, I DONT KNOW WHAT ILL DO WITHOUT HIM. HE MEANS A LOT TO SO MANY PEOPLE AND THE COMMUNITY!

THANK YOU SINCERELY,

SHANNA BRATCHER
(JUSTIN MCKNIGHTS FIANCE)

EXHIBIT

C

(330-466-9449)          10/19/18

Your Honor:

I met Justin McKnight in the spring of 2014. He was willing to change the way he was living in the past. I hired him in at Countryview Landscaping which he took his job very seriously. We gave him many responsibilites such as a truck payment and a loan of $5,000 which he was never late paying back. Also made him responsible for picking up all of the workers in the mornings which he was always on-time and had no tardys or absences. He took this opportunity and made the most of it.

When I first met Justin he had nothing. In a very short time he made strides in progressing his life and became highly appriciated in the company and our community.

EXHIBIT

D

Your Honor,

I am writing this letter on behalf of Justin McKnight.

My name is Patricia Bratcher, and I am an Administrative Assistant in Inventory at Fresh Mark Cold Storage, for the past 13 years.

I have known Justin for close to 3 years now, he is engaged to my daughter, Shawna Bratcher.

In the years I have known him, I have seen nothing but honesty, loyalty and caring for anyone he comes in contact with. He is a hard worker, dedicated to his family and has a kind soul. My whole family has welcomed him with open arms. He is not yet married to my daughter, but I already consider him my son-in-law.

I can honestly say that he saved my daughter's life. She came out of an abusive relationship that was so bad, that I believe if Justin didn't come into her life, she would not be with us right now, and I can never thank him enough for that. She is a completely different person, happy, always smiling and it's all because of him. He takes

Care of her and loves her with every fiber of his being. He is not the monster he is being portrayed out to be.

I ask that you take the opportunity to talk to Justin and see him as the rest of us see him and you will see he is the kind of person that means no harm to anyone and is someone that you wish the rest of the world would take example of.

Please consider all factors before you come to a conclusion on his sentencing.

Thank you very much for your time.

Sincerely,
Patricia Butcher
(330-785-8177)

EXHIBIT
E

Your Honor,                    (330 312 3595)

This is Julie McKnight, the mother of Justin McKnight. Finally, after years I have my son back. Over the last 3 years he he completely turned his life around. He has become someone I can trust AND depend on. Once he set his mind to it, I was able to witness the progression and I can't be more proud of him.

I watched him go from nothing, living with a friend, taking the bus everywhere, to have a great job, his own truck & living in a nice duplex with his now Fiance, Shawna. The old Justin would have gave up before he could of tried to change. Justin has full-time employment with the same company that took a chance on him by looking past his past mistakes and criminal record.

Justin works out of the community I live in and people are always coming to me and telling me what a good young man and hard worker my son is.

This makes me very proud and I waited a long time to hear those words from people again. I couldn't be happier with the man he has become and has worked so hard to change in order to do so. Drugs took Justin down a very long and dark road. All of the years he was on drugs he was not himself and it changed him in many ways. It wasn't until Justin was able to enter rehab and treatment that

I started to see real change in Justins behavior. I mention this because I have observed Justins behavior his whole life and I know with the proper help, he can change. Also, he can ammend this situation with proper help as well.

My health is not good and Justin is my only child, therefore, my only support. Justin helps me through difficult times in my life. I have no one else but Justin! Justin helps me financially and with things I cannot do myself.

I just ask that you consider that Justin is NOT the person that this situation implies. He is caring, honest, and dependable. He has worked extremely hard to get his life back on track, and a lot of people depend on him.

Justin had made serious mistakes but he also works very hard to right those mistakes. I have seen him overcome heroin addiction to become a valuble member of society and someone I am proud to call my son.

Given the opportunity I know that Justin will make this situation right and do everything he can to rebuild his life.

Thank you for your time,

Julie McKnight